IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SUSAN N. BOYD,            )
       Plaintiff,    )
                             )
v.                        ) Civil Action No. 10-1460
                             )
FEDERATED INVESTORS, INC.,)
       Defendant.      )

MEMORANDUM

Gary L. Lancaster,                                            January 11, 2012
Chief Judge.

     This is an employment discrimination action. Plaintiff, Susan N. Boyd, brings claims for wrongful termination against her former employer, Federated Investors, Inc. ("Federated"), under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 PA.CONS.STAT. §§ 951, et seq.[1] Ms. Boyd seeks an award of back pay, front pay or reinstatement, liquidated damages, and reasonable costs and attorneys' fees.

     Federated has filed a motion for summary judgment arguing that Ms. Boyd was terminated because of unsatisfactory job performance. [Doc. No. 31.] Ms. Boyd argues that she was fired as a result of age discrimination.

---

[1] The same analysis applies to both the ADEA claim and the PHRA claim. Thus, the disposition of the PHRA claim follows from the disposition of the ADEA claim. Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) (noting Pennsylvania courts "generally interpret the PHRA in accord with its federal counterparts").

For the following reasons, Federated's motion for summary judgment will be granted.

I. FACTUAL BACKGROUND

Unless otherwise indicated, the following material facts are undisputed. Additional material facts may be discussed elsewhere in this memorandum, in context.

Ms. Boyd was hired by Mary Ann Smith, an Assistant Business Controller who would serve as Ms. Boyd's direct supervisor, to fill a Financial Analyst position. Ms. Smith believed that based on Ms. Boyd's interview and resume, Ms. Boyd had the skills necessary for the job. Ms. Boyd was 50 years old when she was hired. Ms. Smith was 46 at the time.

Ms. Boyd's starting salary as a Financial Analyst was $60,000 and increased to $62,100. This salary was on the higher end of Federated's established range for the Financial Analyst position. Ms. Boyd was paid more than the other Financial Analysts in her group because of her extensive experience. This level of experience, including 17 years in professional accounting and finance, meant Federated expected a higher degree of performance from Ms. Boyd than it did from her fellow Financial Analysts.

During her time at Federated, Ms. Boyd reported to Ms. Smith, and the two worked closely together. This working

relationship included daily communications, and personal review of Ms. Boyd's work by Ms. Smith.

Ms. Smith conducted Ms. Boyd's first-year performance evaluation in December 2008. The parties offer different characterizations of this evaluation - Federated contends that it was not overly glowing, but Ms. Boyd points to the fact that she was rated "Successful" in all categories. The content of this evaluation was generally positive, but indicated areas in which Ms. Boyd was expected to grow as she gained more familiarity with her position. Ms. Boyd was disappointed in the evaluation. She did, however, admit to some minor shortcomings in her first year, including being less prepared than she should have been for one or two meetings and not knowing how long it would take to prepare certain reports.

During her second year at Federated, Ms. Boyd was assigned more complex, independent financial analysis for various business units. Ms. Boyd understood that Ms. Smith's expectations for her would increase in her second year. But Ms. Smith did not see the level of improvement she expected of Ms. Boyd, and Ms. Smith's November 2009 annual performance evaluation of Ms. Boyd reflected her disappointment.

In her second evaluation, Ms. Boyd was graded significantly worse than she had been in her first year. The parties again offer different characterizations of this evaluation. However,

it is undisputed that the evaluation stated Ms. Boyd was successful in some areas and in need of improvement in others. This evaluation included the following comments regarding Ms. Boyd:

- "[H]as not consistently and effectively evaluated customer goals."

- "[S]truggles with some of the concepts and analysis necessary to support the technology division which comprises 75% of her job responsibilities."

- "[H]as not demonstrated the ability to [problem solve] on an independent basis. Instead, she requires specific direction to start and complete analysis."

- "As [Ms. Boyd] moves into her third year as an Analyst she will be held accountable to fully perform the Financial Analyst function[.]"

At this point, Ms. Smith wanted Ms. Boyd to succeed, to understand the purpose of the constructive feedback provided, and to proactively develop her job skills. Ms. Smith met with Ms. Boyd to discuss the second annual evaluation, and to explain her critiques and expectations.

At that meeting, Ms. Smith requested that Ms. Boyd develop an action plan and schedule a meeting to discuss improving her performance. Ms. Boyd did not set up such a meeting between November 2009 and January 14, 2010.

By January 2010, Ms. Smith had become so disappointed in Ms. Boyd's performance and lackluster response to Ms. Smith's instruction that Ms. Boyd take an active role in her

professional development that Ms. Smith sought guidance on two occasions from Federated's Human Resources representative, Karen Gigliotti. Ms. Smith's supervisor, Gina Jacobs, also participated in a meeting related to Ms. Boyd's performance and observed that Ms. Boyd appeared to have "checked out." In Ms. Smith's view, Ms. Boyd was not actively working to develop and was simply "going through the motions."

On January 14, 2010, Ms. Smith met with Ms. Boyd to discuss her concerns regarding Ms. Boyd's performance. The two met again to discuss performance issues on or about February 3, 2010. These were two of eight meetings Ms. Smith and Ms. Boyd held regarding Ms. Boyd's performance, the last of which took place on April 28, 2010.

In March 2010, Ms. Smith placed Ms. Boyd on Federated's formal corrective action process, known as "Plans for Improvement". The Plans for Improvement program calls for the supervisor of an employee with performance issues to identify for the employee the specific performance issues and the supervisor's expectations for corrective action. Ms. Smith provided Ms. Boyd with a detailed Plans for Improvement document ("PID"), approved by Ms. Smith's managers, which provided examples of Ms. Boyd's performance shortcomings. Ms. Boyd disputes the factual underpinnings of those examples. The PID also contained guidelines for the steps Ms. Boyd would need to

take to raise her performance to an acceptable level. Ms. Boyd disagreed with the feedback provided, and informed Ms. Smith of her disagreement.

After she was placed on Plans for Improvement, Ms. Boyd made a practice of compiling positive feedback she received from clients, and of cataloguing mistakes made by other analysts. She did this with the aim of demonstrating that she was being treated unfairly.

On March 23, 2010, Ms. Boyd signed her PID, stating in writing along with her signature that she disagreed with all of its contents. That same day, Ms. Boyd met with Ms. Gigliotti from Human Resources to complain about Ms. Smith's critique of her performance. During this meeting, Ms. Boyd stated that she felt discriminated against, but did not state that she thought the discrimination was based on her age.

On March 29, 2010, a meeting was held between Ms. Boyd, Ms. Smith, Ms. Jacobs, and Ms. Gigliotti to discuss the Plans for Improvement issues. Prior to the meeting, Ms. Jacobs conducted an independent review of the workload and expectations set for Ms. Boyd, and concluded that they were reasonable and consistent with those of other analysts. At that meeting, Ms. Boyd's supervisors provided their views on ways in which she could improve her performance.

Ms. Boyd met with Ms. Smith four more times in April 2010 to discuss implementing the corrective actions identified in the PID. These weekly meetings involved Ms. Smith providing Ms. Boyd with examples of her work product feedback and ratings of Ms. Boyd's performance. Ms. Smith consistently rated Ms. Boyd as unsatisfactory in all of the applicable core competency areas.

On May 5, 2010, Ms. Boyd's employment with Federated was terminated. Ms. Boyd was 52 years of age at the time of her termination. Ms. Smith made this decision after concluding that Ms. Boyd was still not performing at an acceptable level, despite the Plans for Improvement guidelines and regular performance meetings.

In January 2011, Federated hired a new Financial Analyst, Kevin Duffin. Mr. Duffin was born in 1985, making him approximately 26 years younger than Ms. Boyd. Mr. Duffin was the first Financial Analyst hired after Ms. Boyd's termination.

II. <u>LEGAL AUTHORITY</u>

The court shall grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets its burden of proving that no genuine issue of material fact exists, then the

nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). In ruling on a motion for summary judgment, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000) (citing cases).

The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue under the governing substantive law. See Anderson v. Liberty Lobby, 477 U.S. at 248-49. Moreover, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. United States Postal Serv., 409

F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 322-23.

In summary, the inquiry in ruling on a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute, or whether the evidence is such that the movant must prevail as a matter of law.

III. DISCUSSION

A. Sanctions

The court will first address Federated's request that Ms. Boyd's case be dismissed as a sanction for a misrepresentation made during discovery. Federated originally raised this argument in a separate motion for sanctions [Doc. No. 26], which the court orally denied at the June 29, 2011 post-discovery status conference [Doc. No. 29]. Federated restates its position as an alternative ground for relief in the instant motion for summary judgment. We again conclude that dismissal of the case as a discovery sanction is unwarranted.

9

Federated argues that Ms. Boyd falsely represented in an interrogatory that she had direct evidence of age discrimination. Ms. Boyd alleged that Ms. Smith said: "We don't like you. You don't dress as nice as us, you are overweight and you are old." Eventually, Ms. Boyd would recant this allegation. Ms. Boyd explains that the interrogatory response was made in good faith, that the traumatic work environment affected her memory, and that she later corrected the statement. Ms. Boyd further argues that she never claimed the alleged comment about her age was made as part of the termination decision making process, or that it was anything more than a non-actionable "stray remark."

"[D]ismissals with prejudice . . . are drastic sanctions, termed 'extreme' by the Supreme Court[.]" Poulis v. State Farm Fire and Casualty Co., 747 F.3d 863, 867-68 (3d Cir. 1984) (internal citation omitted). In determining whether such an extreme sanction is warranted, the court must consider the following factors: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the

meritoriousness of the claim or defense." Id. at 868. "In balancing the Poulis factors [there is no] 'magic formula' or 'mechanical calculation'[.]" Briscoe v. Klaus, 538 F.3d 252, 263 (3d Cir. 2008).

While Ms. Boyd's statement of direct evidence of discrimination, later recanted, is troubling, the court is not convinced that it provides a sufficient basis to dismiss this action in its entirety. In light of Ms. Boyd's recanting of the statement, and her acknowledgment that even if true it was simply a stray remark that did not constitute direct evidence of age discrimination, the prejudice to Federated is not sufficient to warrant the extreme sanction of dismissal.

Accordingly, the court will evaluate Ms. Boyd's claim of age discrimination on the merits.

B. Merits of the Age Discrimination Claim

Federated asserts Ms. Boyd's firing was based on consistently substandard performance, and failure to improve after extensive performance reviews and meetings. Ms. Boyd argues that she was fired because of her age, and that Federated's contentions regarding her performance are a pretext for age discrimination.

The ADEA provides: "It shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or

11

otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age[.]" Potence v. Hazleton Area School Dist., 357 F.3d 366, 370 (3d Cir. 2004) (citing 29 U.S.C. §§ 623(a), et seq.). Cases based on alleged age discrimination follow the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009).

The first step in this framework is that plaintiff establish a prima facie case. In order to establish a prima facie case of age discrimination, the plaintiff must produce sufficient evidence to convince a reasonable factfinder that: (1) she is over forty years of age; (2) she is qualified for the position in question; (3) she suffered from an adverse employment action; and (4) that her replacement was sufficiently younger to permit a reasonable inference of age discrimination. Potence, 357 F.3d at 370 (citing Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir. 2001)).

If a plaintiff does establish a prima facie case, then the burden shifts to the defendant to show that there was a nondiscriminatory reason for the adverse employment decision. If the defendant does so, then the plaintiff must submit evidence from which a factfinder could reasonably conclude that the

employer's articulated reasons were a pretext for age discrimination.

There are two ways in which a plaintiff can prove pretext. First, a plaintiff can present evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication." Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994). "[T]he nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." Keller v. Prix Credit Alliance, Inc., 130 F.3d 1101, 1108-09 (3d Cir. 1997) (internal quotation omitted). The plaintiff must show not merely that the employer's proffered reason was wrong, but that it was "so plainly wrong that it cannot have been the employer's real reason." Id. at 1109. "The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." Id. (citation omitted). Second, a plaintiff can provide evidence that allows the factfinder to infer that discrimination was "the 'but-for' cause of the employer's adverse decision." Gross v. FBL Financial Services, Inc., 557 U.S. 167, 129 S.Ct 2343, 2350 (2009).

13

The parties do not dispute that Ms. Boyd meets her burden to establish the *prima facie* case and that Federated meets its burden to articulate a legitimate, nondiscriminatory reason for Ms. Boyd's termination. Accordingly, the only issue here is whether Ms. Boyd has produced sufficient evidence to prove that Federated's nondiscriminatory reason for termination is a pretext for age discrimination.

To get her case to trial, Ms. Boyd must provide evidence that would allow a reasonable juror to either disbelieve Federated's articulated basis for her termination or to believe that age discrimination was the true cause. We conclude that she has presented no such evidence. Ms. Boyd has provided no evidence to undermine Federated's contention that her performance was unsatisfactory, or to demonstrate that Federated terminated her because of her age.

Ms. Boyd contends that her performance problems were a pretext for age discrimination because her performance was satisfactory and on par with or better than that of her fellow Financial Analysts. Ms. Boyd points out that she disputed her negative evaluations throughout the Plans for Improvement performance review process, and maintains that the criticisms leading to her termination were unfounded and unfair.

Ms. Boyd disputes the soundness of Federated's decision to terminate her and the particulars of her performance

evaluations. But Ms. Boyd's disagreement with her performance evaluations is insufficient to show pretext. See Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991) ("The fact that an employee disagrees with an employer's evaluation of him does not prove pretext"), overruled in part on other grounds by St. Mary's Honor Ctr. V. Hicks, 509 U.S. 502 (1993).

Ms. Boyd also argues that there is evidence showing Ms. Smith's evaluations are not credible because Ms. Boyd was held accountable for mistakes on projects that were Ms. Smith's responsibility. Specifically, Ms. Boyd argues that, contrary to the PID, she was not responsible for, but nonetheless criticized for, mistakes in Budget Book Reports, Base Salary Variances, and Network Strategy tasks. Ms. Boyd's evidence consists entirely of her own handwritten notes on the PID [Doc. No. 41, Exh. 4, pp. 22-23] and deposition testimony. The PID, however, shows that Ms. Boyd's performance failures were extensive and fundamental, and thus not adequately refuted by claims that certain mistakes were attributable to Ms. Smith. For example, the PID stated that Ms. Boyd was not consistently forward thinking, did not consistently take ownership of her work, and did not consistently make sound or timely decisions. [Doc. No. 33, ¶ 70.]

Even assuming Ms. Boyd was wrongly criticized for certain errors, there remains a great deal of evidence to support

15

Federated's assertion that Ms. Boyd's performance was deficient.[2] Indeed, Federated's analysis of Ms. Boyd's performance was conducted through an extensive review process, and was not solely Ms. Smith's decision. The process included assessments by Ms. Smith's supervisor and a human resources representative. As a result of this process, Federated identified numerous shortcomings in Ms. Boyd's job performance, set forth a path by which Ms. Boyd could remedy those deficiencies, and met with her regularly to discuss her progress. Because Federated's decision was the culmination of a multi-year process of performance reviews and improvement plans, and there is evidence to refute only a few criticisms of Ms. Boyd levied during that process, a reasonable factfinder could not conclude that it was a fabrication or otherwise not credible.

Furthermore, Ms. Boyd cannot defeat Federated's motion for summary judgment under the second pretext prong because the record is simply devoid of any direct or circumstantial evidence that would suggest Ms. Smith and Federated's true reason for terminating Ms. Boyd was her age. See Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 646 (3d Cir. 1998) (stating under the less stringent pre-Gross standard, "[t]he

---

[2] Ms. Boyd's contention that Ms. Smith unfairly attempted to blame a budgeting error on her in 2008 [Doc. No. 40, ¶¶ 161-65] is similarly insufficient to permit a reasonable juror to find that Federated's evaluation process was not credible.

ultimate inquiry is whether the decision was motivated by the affected employee's age.") Ms. Boyd makes a half-hearted argument that similarly situated Federated employees received more favorable treatment. Ms. Boyd argues that Cindy Dusi, a younger employee, received more favorable treatment. But Ms. Boyd admits that Ms. Dusi worked in a lower position - Staff Analyst as opposed to Financial Analyst - and earned significantly less money than Ms. Boyd. As such, Ms. Dusi is not a valid comparator and this comparison is not sufficient to defeat summary judgment. See id. at 645-46 (noting that a plaintiff may not selectively choose a comparator and bears the burden of demonstrating that similarly situated persons are treated differently). The lack of any evidence of age discrimination is unsurprising in light of the fact that Ms. Boyd was hired at age 50. See Emanuel v. Oliver, Wyman & Co., LLC, 85 F. Supp. 2d 321, 334 (S.D.N.Y. 2000) (concluding no reasonable jury could find age discrimination in case of employee hired at age 47 and terminated at age 48).

The evidence of record contains no basis for a reasonable jury to conclude that Ms. Boyd was terminated based on age discrimination. Accordingly, the court will grant summary judgment in favor of Federated.

IV. <u>CONCLUSION</u>

For the foregoing reasons, Federated's motion for summary judgment will be granted. An appropriate order follows.

```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

SUSAN N. BOYD,                    )
        Plaintiff,            )
                              )
v.                                ) Civil Action No. 10-1460
                              )
FEDERATED INVESTORS, INC.,        )
        Defendant.            )

## ORDER

AND NOW, this 11th day of January, 2012, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 31] is GRANTED.

The Clerk of Courts is directed to mark this case CLOSED.

BY THE COURT,

/s/ G.L. Lancaster, C.J.

cc: All Counsel of Record